OZIE L. HALL, JR.,
        Plaintiff,

v.

MATTHEW L. LILES, individually and as Assistant Attorney General of the State of North Carolina; JAMES STEVEN BASS, individually and as Assistant State Auditor of the State of North Carolina; ALEXANDRA S. SCHAUSS, individually and as Director of the Division of School Business, N.C. Department of Public Instruction; LEIGH ANN KERR, individually and as Assistant Director of the Division of School Business, N.C. Department of Public Instruction; EUGENE THOMAS BRUTON, individually and as Staff Accountant in the Division of School Business, N.C. Department of Public Instruction,
        Defendants.

ORDER

This cause comes before the Court on defendants' motions to dismiss and plaintiff's motion to file an amended complaint. The appropriate responses and replies have been filed, or the time for doing so has expired, and in this posture the motions are ripe for ruling. For the reasons that follow, plaintiff's complaint is dismissed and his motion to amend is denied.

## BACKGROUND

Plaintiff, who proceeds in this action *pro se*, filed his complaint against defendants on April 24, 2023, seeking to recover damages for alleged violations of his federal constitutional and civil rights. Plaintiff further alleges claims for violations of his rights under the North Carolina

Constitution and state law, and in addition to damages seeks declaratory and injunctive relief. Plaintiff alleges that his claims arise from a pattern of misconduct within the North Carolina Department of Public Instruction, which began before 2007 and "matured into a conspiracy, and culminated in a failed individual capacity civil prosecution" of plaintiff in Wake County Superior Court. *See, generally, State ex rel. Stein v. Kinston Charter Acad.*, 379 N.C. 560 (2021).

Plaintiff alleges the following in his complaint which specifically relates to the conduct of defendants. [DE 1]. Plaintiff was the Chief Executive Officer (CEO) and Principal of Kinston Charter Academy from 2007 until it surrendered its charter in 2013. Plaintiff had also served as the President of the Pitt County Coalition for Educating Black Children, which was party to a school desegregation and unitary status case filed in this district in 1969 and reopened for additional proceedings beginning in 2008. *See Everett v. Pitt County Board of Education*, No. 6:69-cv-702-H (E.D.N.C. filed Nov. 12, 1969). Plaintiff alleges that he became well known to the Department of Public Instruction and State Board of Education as a result of his involvement with the *Everett* case.

Plaintiff alleges that when he became CEO of Kinston Charter Academy (KCA), which had been in operation since 2004, *Kinston Charter Acad.*, 379 N.C. at 562, he was pressured by defendant Eugene Bruton, a staff accountant in the Division of School Business in the Department of Public Instruction, to continue using Acadia Northstar LLC as a financial services vendor, despite plaintiff's belief that Acadia Northstar was providing KCA with misleading and inaccurate monthly financial reports. Plaintiff was also active in opposing what he believed was a pattern of race-based discrimination in North Carolina's treatment of charter schools, culminating in a civil rights complaint filed with the United States Department of Education against the North Carolina State Board of Education, Department of Public Instruction, and Office of Charter Schools in 2010.

2

Plaintiff alleges that it was well known that the Department of Public Instruction was upset with him over the civil rights complaint. Plaintiff further alleges that in 2010 he reported defendant Bruton to the Division of School Business for misconduct relating to the Acadia Northstar contract. In 2011, KCA terminated its Acadia Northstar contract and engaged a different financial services vendor.

Plaintiff alleges that, in or around 2012, Bruton and defendant Schauss, Director of the Division of School Business, formed a conspiracy to use illegal means to close KCA, discredit plaintiff and damage his reputation, and violate and impair plaintiff's right to engage in his profession as an educator and advocate. Defendant Kerr, who became the Assistant Director of the Division of School Business in 2013, subsequently joined in this conspiracy to "destroy KCA and discredit Plaintiff Hall based upon racial animus and the desire to silence Plaintiff Hall in exercising his rights to free speech." Comp. ¶ 67. Some of the steps Bruton, Schauss, and Kerr allegedly took included a policy change that disrupted KCA's cash flow, completing a false financial noncompliance finding, and asking the North Carolina State Board of Education to revoke KCA's charter based upon the failure to make payments to state health and retirement plans for KCA employees.

"In North Carolina, charter schools receive operating funds from the State on a per pupil basis. In the spring of each year, a charter school is required to provide an estimate to the Department of Public Instruction . . . of its anticipated average daily membership . . . for the upcoming school year." *State ex rel. Cooper v. Kinston Charter Acad.*, 268 N.C. App. 531, 533 (2019). Before the start of the 2013-2014 school year, plaintiff provided the Department of Public Instruction with an estimated initial KCA enrollment of 366 students for the 2013-2014 year. This resulted in KCA receiving $666,000 in state public school funds in July 2013. On August 22, 2013,

3

KCA received a letter from the Office of Charter Schools stating that, at the request of the Office of Charter Schools and the Division of School Business, KCA had been placed on the Board of Education's September 4, 2013, public meeting agenda to consider revocation of KCA's charter. Plaintiff alleges these actions had immediate adverse impact on student enrollment and that KCA experienced an immediate, dramatic decline in student enrollment as a result thereof. On September 4, 2013, KCA's board of directors held an emergency meeting and voted to surrender the school's charter.

A closeout monitoring visit was conducted at KCA on September 10, 2013, at which defendant Kerr was present. Plaintiff alleges that Kerr was disorganized, belligerent, made racial slurs, and appeared to intentionally provoke conflict. Plaintiff further alleges that defendant Kerr informed him that day that she had contacts at the Office of the State Auditor and would make sure that the State Auditor would place plaintiff in a "living hell." Plaintiff alleges that after that statement, defendant Schauss, who was Kerr's supervisor, submitted a written document to the Office of the State Auditor seeking an audit of KCA.

An investigation was initiated by the Office of the State Auditor into KCA and its finances, with which plaintiff fully complied, and its report was issued in January 2015. The State Auditor's report concluded that KCA had not provided evidence to support its estimated student enrollment increase for the 2013-14 school year, that plaintiff had improperly hired relatives to work at KCA who were not qualified, and that KCA had improperly used state funds provided in July 2013 to repay $230,000 in loans and to pay plaintiff $11,000 in vacation pay.

In April 2016, North Carolina's Attorney General filed suit against plaintiff, his wife, who sat on KCA's board of directors, and KCA alleging violations of North Carolina's False Claims Act, Nonprofit Corporations Act, and Unfair and Deceptive Trade Practices Act. *See, generally,*

4

*Kinston Charter Acad.*, 379 N.C. 560. Plaintiff alleges that defendant Liles, an assistant Attorney General, had begun his investigation of plaintiff and KCA in 2014 and that defendant Liles or someone from his office collaborated with defendant Bass and the State Auditor's Office to include a false statement regarding the lack of explanation for the 2013-14 school year estimated enrollment in the final report. Plaintiff alleges that defendant Liles filed the suit despite having collected sufficient data and information to conclude there was no legitimate basis upon which to file a complaint against plaintiff, and that he filed suit with actual malice after having been made aware of plaintiff's civil rights advocacy and based upon racial animus and retaliation.

The Attorney General's complaint was filed in Wake County Superior Court, which dismissed the Unfair and Deceptive Trade Practices Act and Nonprofit Corporations Act claims, but allowed the False Claims Act claims to proceed. The North Carolina Supreme Court later affirmed that ruling. *Kinston Charter Acad.*, 379 N.C. at 588. On June 10, 2022, pursuant to a consent order, KCA and the State settled the case[1] and the claims against plaintiff were subsequently dismissed with prejudice. [DE 1-4].

In the instant complaint, plaintiff has brought federal and state law claims. Plaintiff brings claims under 42 U.S.C. § 1983 for violation of his equal protection and due process rights as well as a civil conspiracy claim under 42 U.S.C. § 1985. Plaintiff also appears to allege a First Amendment retaliation claim. Plaintiff brings claims under North Carolina state law for malicious prosecution, abuse of process, civil conspiracy, and violation of the North Carolina Constitution. Defendants Liles and Bass have moved to dismiss plaintiff's claims against them for lack of subject matter jurisdiction and for failure to state a claim. Defendants Schauss, Kerr, and Bruton have

---

[1] A copy of the consent order has not been filed as a part of the record in this case, but defendants Liles and Bass have noted the order in their brief. Although the consent order is not part of an allegation in plaintiff's complaint, plaintiff does not appear to challenge the existence of the consent order, and only states that he was not a party to KCA's settlement.

moved to dismiss plaintiff's claims on the same grounds. Both sets of defendants argue that Eleventh Amendment, absolute, qualified, and public official immunity bar plaintiff's claims, that his claims are untimely, and that plaintiff has failed to plausibly allege his claims. Plaintiff seeks to amend his complaint to address any alleged deficiencies in his original complaint. Both sets of defendants oppose granting leave to amend, arguing that, at bottom, amendment would be futile.

## DISCUSSION

Generally, leave to amend a complaint should be freely given where justice so requires. Fed. R. Civ. P. 15(a). However, leave may be denied where the amendment would be prejudicial to the opposing party, where there has been bad faith on the part of the moving party, or when the amendment would be futile. *Johnson v. Oroweat Food Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A proposed amendment is "futile if the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX, Inc. v. N. Carolina Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (citation omitted).

Plaintiff's additional allegations in his proposed amended complaint concern the underlying factual grounds for his claims. Because, however, as is discussed more fully below, the Court concludes that plaintiff's federal claims are subject to dismissal and declines to exercise its supplemental jurisdiction over plaintiff's state law claims, the Court determines that amendment at this stage would be futile.

A motion to dismiss for lack of subject matter jurisdiction is considered under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted). When subject-matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642,

647–50 (4th Cir. 1999). When a facial challenge to subject-matter jurisdiction is raised, the facts alleged by the plaintiff in the complaint are taken as true, "and the motion must be denied if the complaint alleges sufficient facts to invoke subject-matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The Court can consider evidence outside the pleadings without converting the motion into one for summary judgment. *See, e.g., Evans*, 166 F.3d at 647.

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

A. Official capacity claims

"The Eleventh Amendment bars suit against non-consenting states by private individuals in federal court." *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). This guarantee applies not only to suits against the state itself but also to suits where "one of [the state's] agencies or departments is named as the defendant" as well as state officers who are sued in their official capacities. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-102 (1984). The Eleventh Amendment bars suit in federal court regardless of the nature of the relief that is sought,

7

*id.* at 100, unless one of the limited exceptions, such as waiver or abrogation, applies. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Seminole Tribe v. Florida*, 517 U.S. 44 (1996).

The claims against defendants Liles, Bass, Schauss, Kerr and Bruton in their official capacities are barred by Eleventh Amendment immunity. Plaintiff has identified no waiver of the North Carolina's Eleventh Amendment immunity for his claims. Instead, plaintiff has responded that his federal claims are alleged against defendants in their official capacities only insofar as they fall under *Ex Parte Young*. Under *Ex Parte Young*, "federal courts may exercise jurisdiction over claims against state officials by persons at risk of or suffering from violations by those officials of federally protected rights, if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998). Where the effect of a declaratory judgment and injunction would be to "undo accomplished state action[,]" the *Ex Parte Young* exception does not apply. *Paraguay*, 134 F.3d at 628. Moreover, "even though the consequences of any past violation may persist, invoking those effects does not transform past state action into an ongoing violation." *Jemsek v. Rhyne*, 662 F. App'x 206, 211 (4th Cir. 2016).

Plaintiff argues that the prospective relief he seeks against defendants in their official capacities is "an injunction to restrain future misconduct[.]" In his complaint, plaintiff seeks a declaration that he did not "mismanage" KCA, that he was maliciously prosecuted, and that his state and federal constitutional rights were violated by defendants. As discussed above, a declaration regarding past conduct cannot be characterized as prospective injunctive relief. Plaintiff's argument regarding future misconduct is also misplaced, as he has identified no ongoing violation of federal law. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002).

8

Plaintiff's remaining arguments against application of Eleventh Amendment immunity fail. The Supreme Court has consistently applied Eleventh Amendment immunity in suits "by citizens against their own States." *Garrett*, 531 U.S. at 363. Finally, the *Ex parte Young* doctrine does not provide a basis for relief for alleged violations of state law. *Bragg v. W. Virginia Coal Ass'n*, 248 F.3d 275, 293 (4th Cir. 2001). Accordingly, defendants are immune from suit on plaintiff's claims against them in their official capacities.

B. Absolute immunity

Defendant Liles is entitled to absolute immunity for his role in bringing a civil action against plaintiff. "[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under [§] 1983." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).

> Since *Imbler*, courts have extended the immunity beyond "initiating a prosecution and . . . presenting the State's case," *id.* at 431, to cover any activities undertaken "in connection with one's duties in functioning as a prosecutor," *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). The immunity also extends beyond the criminal process to conduct in civil proceedings where a government attorney is operating in an enforcement role in "initiating . . . judicial proceedings," *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000), or "undertaking the defense of a civil suit," *Al-Bari v. Winn*, 1990 U.S. App. LEXIS 11539, No. 89-5150, 1990 WL 94229, at *1 (6th Cir. July 9, 1990).

*Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) (cleaned up); *see also Murphy v. Morris*, 849 F.2d 1101, 1105 (8th Cir. 1988) ("state assistant attorney general's function as a government advocate entitles him or her to absolute immunity from suit for damages.").

In determining whether absolute immunity applies to a prosecutor's actions, courts apply a "functional approach" and examine "the specific act challenged[.]" *Nero v. Mosby*, 890 F.3d 106, 120 (4th Cir. 2018) (internal quotations and citations omitted); *see also Savage v. Maryland*, 896 F.3d 260, 268 (4th Cir. 2018). Here, plaintiff's allegations against Liles include that Liles

9

interviewed Department of Public Instruction officials, collected documents, and held meetings with the Office of the State Auditor about its investigation, findings, and the underlying facts. These are the types of actions by a prosecutor that are entitled to immunity. *Nero*, 890 F.3d at 119; *Dababnah v. Keller-Burnside*, 208 F.3d 467, 470 (4th Cir. 2000) ("absolute immunity is afforded prosecutors when acting 'within the advocate's role.'").

Plaintiff also alleges that Liles concluded after his investigation that there was no legitimate basis upon which to file a claim against plaintiff, but nonetheless named plaintiff as a defendant in the Attorney General's suit and falsely and maliciously claimed that plaintiff made a false statement in making a claim for state funds based upon the content of a telephone call. Plaintiff further alleges, on information and belief, that Liles had been made aware during the investigation stage that plaintiff was involved in civil rights actions, and further that Liles or someone from his office conspired to include a false statement in the State Auditor's final report. These allegations, insofar as they are outside the protected conduct of a prosecutor, are speculative and conclusory. *See also Carter v. Burch*, 34 F.3d 257, 263 (4th Cir. 1994) ("the presentation of false testimony in court is a charge for which the prosecutor is afforded absolute immunity."). Plaintiff alleges, without any factual support, that Liles joined in an ongoing conspiracy against him when investigating KCA's and plaintiff's actions, and that this conspiracy was motivated by, at bottom, racial animus. Even viewing the facts in the light most favorable to plaintiff, his allegations are conclusory and speculative, and the Court determines that Liles is entitled to absolute immunity for his role in prosecuting the False Claims Act complaint against plaintiff.

C. Statute of limitations

Plaintiff's claims under § 1983 and § 1985 are time-barred. "The statute of limitations for all § 1983 claims is borrowed from the applicable state's statute of limitations for personal-injury

10

actions, even when a plaintiff's particular § 1983 claim does not involve personal injury." *Tommy Davis Constr., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 66-67 (4th Cir. 2015). In North Carolina, the limitations period is three years. *Id.* at 67. The same is true for claims under § 1985. *McHam v. N.C. Mut. Life Ins. Co.*, No. 1:05CV01168, 2007 U.S. Dist. LEXIS 42582, at *5 (M.D.N.C. June 11, 2007).

When a section 1983 or 1985 claim accrues is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "For most common-law torts, a plaintiff's cause of action accrues, and the limitations period commences, when the plaintiff knows or has reason to know of his injury." *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 389 (4th Cir. 2014). However, a court must consider any distinction provided in the common law for the most analogous tort in order to determine when a plaintiff's claim under § 1983 should commence. *Id.* (quoting *Wallace*, 549 U.S. at 388).

KCA's charter was surrendered in September 2013. The State Auditor filed a report in January 2015 and the complaint against plaintiff and KCA was filed in April 2016. Plaintiff filed this action in April 2023, but he knew or had reason to know of the alleged denial of his civil rights, including the alleged conspiracy, denial of equal protection, and First Amendment retaliation, at the latest in April 2016 when the Wake County civil action was filed.

In opposition, plaintiff argues that the "continuing wrong" theory renders his claims timely, and further that he could not have brought this suit until the culmination of the Wake County civil action. "In general, to establish a continuing violation the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice." *Nat'l Adver. Co. v. Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991) (cleaned up, quotation marks and citation omitted). The

11

continuing wrong theory does not apply, however, to "'continual ill effects from an original violation.'" *Id.* (citation omitted).

Plaintiff has not alleged discrete acts repeated by the individual defendants which would cause his § 1983 and § 1985 claims to be timely. Plaintiff's allegations in support of his federal claims consist of conduct surrounding the surrender of KCA's charter, the investigation into KCA and plaintiff, and the filing of a civil suit. Plaintiff's requests to defendant Liles that he dismiss the Wake County civil action, and Liles's refusal, were not separate acts constituting the same alleged violation which would support application of the continuing wrong theory. Plaintiff's bare assertion that his injuries have been caused by an alleged pattern or practice of discrimination also fails to support application of the continuing wrong theory. *Williams v. Giant Food, Inc.*, 370 F.3d 423, 429 (4th Cir. 2004). Plaintiff's proposed amended complaint does not contain allegations which would render his federal claims timely. Though plaintiff argues that defendants initiated and maintained a civil prosecution of plaintiff until June 10, 2022, he nonetheless knew or had reason to know of defendants' alleged wrongful acts when the suit was initiated in April 2016.

Accordingly, the Court determines that, to the extent they are not barred by Eleventh Amendment or absolute immunity, plaintiff's claims under § 1983 and § 1985 are time-barred.

D. Supplemental jurisdiction

"The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain *or* dismiss state law claims when the federal basis for an action drops away." *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995). The Court has determined that defendants are entitled to immunity in some form for plaintiff's federal claims against them and that the federal claims are barred by the applicable statute of limitations, and thus the basis for this Court's

12

Case 5:23-cv-00220-BO-BM Document 39 Filed 12/20/23 Page 12 of 13

jurisdiction has dropped away. Given the early stage of the proceeding, the Court exercises its discretion to dismiss plaintiff's state law claims without prejudice.

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' motions to dismiss [DE 16 & 19] are GRANTED. Plaintiff's federal claims against defendants are DISMISSED. Plaintiff's state law claims are DISMISSED without prejudice as the Court declines to exercise supplemental jurisdiction. Plaintiff's motion to amend his complaint [DE 33] is DENIED.

SO ORDERED, this __ day of December 2023.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE